# In the United States Court of Federal Claims

No. 13-297C
(Filed: June 18, 2014)

* * * * * * * * * * * * * * * * * * * *

LEE DAWSON,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*,

* * * * * * * * * * * * * * * * * * * *

Jurisdiction; Veterans Administration; employment; equitable remedies; intermittent schedule; fraud and coercion.

*Daniel Berko*, San Francisco, CA, for plaintiff.

*Tanya Beth Koenig*, Civil Division, Department of Justice, Washington, DC, with whom are *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, and *Reginald T. Blades, Jr.*, Assistant Director, for defendant.

---

OPINION

---

BRUGGINK, *Judge*.

    Plaintiff, Lee Dawson, is a former employee of the United States Department of Veterans Affairs. In his complaint, he alleges that he, and others similarly situated, were improperly denied certain employee benefits when the agency began to treat them as intermittent, rather than full time employees. Pending is defendant's motion to dismiss for lack of subject matter jurisdiction or in the alternative for failure to state a claim for which relief may be granted. Oral argument was held on February 18, 2014, after which the parties submitted supplemental briefing. The matter is now ready

for disposition. For the reasons described below, we grant defendant's motion to dismiss on jurisdictional grounds.

BACKGROUND[1]

Mr. Dawson was hired as an intern under the Student Educational Employment Program ("SEEP") by the United States Department of Veterans Affairs, Veterans Administration Palo Alto Healthcare Services ("VAPAHCS" or "VA"), in June of 2008. The SEEP program was established in 1977 and provided authority for government agencies to hire students as part-time or full-time employees. *See* Exec. Order No. 12,015, 42 Fed. Reg. 56,947 (Oct. 26, 1977); 5 C.F.R. § 213.3202 (2012). SEEP included two tracks by which students could be employed. The first track, the Student Temporary Employment Program ("STEP"), is governed by 5 C.F.R. § 213.3202(a) and is specifically for temporary employment situations with the possibility of conversion to the second internship track. The second track, the Student Career Experience Program ("SCEP"), is governed by 5 C.F.R. § 213.3202(b) and offers the possibility of a non-competitive conversion from an internship to a term, career, or career-conditional appointment upon the satisfactory completion of certain requirements. 5 C.F.R. § 213.3202(b)(10), (11).[2]

Neither the complaint nor the amended complaint clarify whether plaintiff was originally employed under the STEP or SCEP program, or whether his status may have changed from one to the other between 2008 and 2013, when his employment at the VA ended. Throughout his employment

---

[1] We presume the facts in plaintiff's complaint are correct, and draw all reasonable inferences in plaintiff's favor for the purposes of defendant's motion to dismiss. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). We also rely on the VA Form 3497 attached to the motion to dismiss, which plaintiff signed and which is referenced in the complaint.

[2] Recently, SEEP was replaced by the Pathways Program pursuant to Executive Order 13,562. 75 Fed. Reg. 82,585 (Dec. 27, 2010); *see* 5 C.F.R. pt. 362 (2013). Both "programs are designed to provide clear paths to federal internships and later careers in Government for students and recent graduates." Pl.'s Am. Compl. ¶ 5; *see* 5 C.F.R. § 362.201 (2013) ("The Internship Program provides students in high schools, colleges, trade schools and other qualifying educational institutions . . . the opportunity to explore Federal careers as paid employees while completing their education.").

with VAPAHCS, Mr. Dawson maintained the same forty-hour work week schedule.

On January 14, 2009, Mr. Dawson signed a form entitled, "employee request for change to part-time employment" that adjusted his work schedule from full-time to intermittent, effective February 1, 2009. Attach. to Def.'s Mot. to Dismiss Am. Compl. ("VA Form 3467"); *see* Pl.'s Am. Compl. ¶ 6. The form recites the following as the "reason for requesting change to part-time employment:" "In lieu [sic] of Budget constraints, as instructed by Workforce Development Coordinator on 1/14/09." As a consequence of his change in schedule, VA treated plaintiff, and others who went through the same schedule change, as no longer eligible for health benefits, sick leave, or annual leave.

The complaint alleges that Mr. Dawson and the putative class were not informed until after they executed forms requesting a part-time or intermittent schedule "that [] VAPAHCS would take the position that this [change] would result in a loss of leave benefits . . . , which included annual and sick leave, as well as eligibility for health care and other federal insurance benefits programs for [SEEP] employees." Pl.'s Am. Compl. ¶ 6. It further characterizes VAPAHCS's actions as fraudulent and "underhanded" in that the agency "obtained the consent of approximately 150 SEEP employees to a personnel action which purported to change their work schedules from part-time to 'intermittent' . . . by causing them to fear loss of their jobs if they did not agree to the personnel action." *Id*. Despite the nominal change in schedule, plaintiff continued to work the same hours and schedule as he had previously. Instead of being assigned an altered work schedule as the result of the change in schedule, "[Mr.] Dawson and all class members were required to continue to work their regular full-time or part-time schedule." *Id*.

Mr. Dawson worked for VAPAHCS until January 22, 2013. He filed suit here on April 29, 2013, on his own behalf and on behalf of approximately 300 other similarly-situated individuals.

Plaintiff asks us to find that VAPAHCS withheld benefits from him and the potential class members to which they were entitled by statute or regulation. He seeks the monetary equivalent of at least 36 days of sick and annual leave, along with other employee benefits, which he believes total over $10,000. He also seeks back pay for the entire class in an amount greater than $5 million, attorneys fees pursuant to 5 U.S.C. § 7701(g), and an injunction to prohibit VAPAHCS from denying interns benefits to which they are allegedly

entitled by labeling them intermittent employees. We are unable to grant plaintiff the relief he seeks for the reasons explained below.

## DISCUSSION

I.    Regulatory Background

Key to plaintiff's argument is the language in the regulations applicable to SEEP employees prior to July 10, 2012. Until July 9, 2012,[3] when the SEEP program was replaced by the Pathways Program, benefits for SEEP interns were fixed by two sets of regulations. Applicable to STEP employees was 5 C.F.R. § 213.3202(a)(13), which provided:

> (13) *Benefits*. (i) *Students under this program are eligible for annual and sick leave* and are generally ineligible for retirement coverage. Refer to § 831.201 [Exclusions from retirement coverage] and § 842.105 [Regulatory exclusions from retirement annuity] of this chapter for specific information. (ii) For rules on health and life insurance coverage refer to § 870.202 [Basic insurance amount for life insurance], § 890.102 [Health insurance coverage], and § 890.502 [Contributions and withholdings] of this chapter.

*Id.* (emphasis added).

The regulation governing SCEP interns during the same time period provides the following:

> (16) *Benefits*. (i) Students appointed under this program earn annual and sick leave *and* with no prior service or with less than 5 years of prior civilian service, are generally covered by the Federal Employees Retirement System (FERS) (see part 842 of this chapter). (ii) For life insurance and health benefits coverage

---

[3] On this date, the Pathways Program Regulations became effective. Excepted Service, Career and Career-Conditional Employment; and Pathways Program, 77 Fed. Reg. 28,194 (May 11, 2012) ("Agencies, however, shall have a 6-month transition period following the effective date of the final rule to convert to the Internship Program any students serving under appointments made pursuant to the Student Educational Employment Program [SEEP].").

> refer to § 870.202 [Basic insurance amount for life insurance]
> and § 890.102 [Health insurance coverage] of this chapter.

5 C.F.R. § 213.3202(b)(16) (2012) (emphasis in original).

In the case of STEP employees, therefore, plaintiff can point to language in the appointment regulations making them "eligible" for certain benefits. In the case of SCEP employees, plaintiff can point to language stating that they "earn" annual and sick leave.

Defendant, however, points to other regulations as well as statutory provisions that it contends made plaintiff ineligible for benefits both before and after July 9, 2012. Both SCEP and the current Pathways Program provide that "[a]ppointments are subject to all the requirements and conditions governing term, career, or career-conditional employment . . . ." 5 C.F.R. § 362.105(c)(3) (2013); 5 C.F.R. § 213.3202(b)(10)(i) (2012). Defendant also points out that all leave entitlement ultimately finds its source in Title 5, Chapter 63 of the United States Code, which provides that only "employees" are entitled by law to sick leave and annual leave. *See* 5 U.S.C. §§ 6303, 6307 (2012). An employee, for purposes of Chapter 63 benefits, however, "does not include . . . a part time employee who does not have an established regular tour of duty during the administrative workweek." 5 U.S.C. § 6301(2)(b)(ii). An intermittent employee, in turn, is defined as one who does not have a "regularly scheduled tour of duty." 5 C.F.R. § 340.401(b) (2012); 5 C.F.R. § 340.401(b) (2013). In short, defendant contends that, when plaintiff became an interim employee, he lost whatever entitlement he might have had to annual and sick leave.

Defendant in effect is arguing that the two regulatory provisions allowing the appointment of SCEP or SEEP interns were wrong to the extent they suggested that all interns automatically were either eligible or would earn sick and annual leave. The SEEP regulations intimated more than could have been delivered, because the statutory and regulatory provisions actually controlling sick and annual leave made it clear that interns were ineligible if they worked an "intermittent" schedule. Presumably the intimation would not have been inaccurate if the interns had been treated as having a regularly scheduled tour of duty.

With respect to his claim for the period between January 14, 2009 and July 8, 2012, plaintiff does not question the limitations on leave applicable to intermittent employees. Instead, he contends that his change from full time to

5

intermittent status was bogus because the agency did not explain the consequences of his signing VA Form 3497, and in fact fraudulently deceived him. Plaintiff thus argues that it was improper for the VA to ask him to "request" a change to an intermittent schedule. He also contends, and for purposes of its motion defendant does not challenge the assertion, that plaintiff in fact did not work an intermittent schedule and did work a regular 40-hour schedule. The change from full time to intermittent status is void, according to plaintiff, and the court has the power to declare it so and order repayment to plaintiff of the value of his lost leave.

For the period after July 9, 2012, plaintiff contends that the agency violated its own policy by treating interns as intermittent employees. Plaintiff relies on 5 C.F.R part 362, which, unlike its predecessor regulations, does not mention whether interns are eligible for or earn benefits. Instead, 5 C.F.R. § 362.203(g) (2013) gives the following guidance about intern scheduling:

> There are no limitations on the number of hours an Intern can work per week (so long as any applicable laws and regulations governing overtime and hours of work are adhered to). Agencies and students should agree on a formally-arranged schedule of school and work so that:
>
> > (1) Work responsibilities do not interfere with academic schedule;
> > (2) Completion of the educational program . . . and the Internship Program is accomplished in a reasonable and appropriate timeframe;
> > (3) The agency is informed of and prepared for the student's periods of employment;

Plaintiff urges the court to read the regulation quoted directly above with the notes and comments that preceded its adoption in 2012 by the Office of Personnel Management ("OPM"):

> Two agencies commented on work schedules. One suggested OPM amend the final rule by specifying the number of hours a student may work. We did not amend the final rule because the regulations specify an Intern may work a full or part-time schedule. Interns agreeing to work a full-time schedule must work 40 hours per week. Part-time schedules are generally considered to fall between 16 and 32 hours per week.

6

> Interns are covered by the same rules for hours of duty contained in part 610 of the CFR.
>
> Another agency suggested we modify the final rule to include an intermittent work schedule. We did not modify the final rule because we do not believe an intermittent work schedule is appropriate for an Intern. *Employees on an intermittent work schedule do not have a regularly-scheduled tour of duty; they have no set hours of duty or days of work every week.* This is not conducive for students with a set academic schedule or for Intern appointments intended to train an employee for permanent employment.

Excepted Service, Career and Career-Conditional Employment; and Pathways Program, 77 Fed. Reg. at 28,208 (emphasis supplied). Based on this language, plaintiff asks us to conclude that the agency violated 5 C.F.R. § 362.203(g) when its interns were assigned intermittent schedules.[4] In other words, plaintiff, and others in his situation, *should not have been reclassified as intermittent.*

Plaintiff also asks the court to take judicial notice of advice given on the OPM website that

> an intermittent schedule is appropriate only when the nature of the work is so sporadic and unpredictable that a regularly scheduled tour of duty cannot be scheduled in advance. In establishing the [STEP] program, OPM did not intend to have STEP or SCEP students working on intermittent schedules. Students may work full- or part-time schedules, however, as best meets their needs and the needs of the agency.

Https://www.opm.gov/faqs/topic/employment/index.aspx?cid=b9efecc7-acdf-4b54-8958-3c29a97b5c8f (last visited June 16, 2014).[5]

---

[4] Mr. Dawson worked for a full twelve days under the new regulations because the Pathways Program regulation became effective July 10, 2012 and gave a 6-month transition period for compliance. *See* 77 Fed. Reg. at 28,194.

[5] The comments in the federal register must be read in conjunction with 5 C.F.R. § 213.102(b)(3)(i) (2013), however, which provides, "Unless otherwise
(continued...)

On the assumption that his allegedly coerced, or in any event, unlawful change to an intermittent schedule constitutes an unjustified or unwarranted personnel action, plaintiff invokes the Back Pay Act, 5 U.S.C. § 5596(b)(1) (2012), as a basis for recovering his lost benefits. The Back Pay Act provides that

> An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
>
> > (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
> >
> > > (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and
> > > (ii) reasonable attorney fees . . . .

5 U.S.C. § 5596(b)(1).

---

[5](...continued) specified in a particular appointing authority, an agency may make Schedule A, B, C, or D appointments on either a permanent or nonpermanent basis, with any appropriate work schedule (i.e., full-time, part-time, seasonal, on-call, or intermittent)." *See* 5 C.F.R. § 213.3401 (stating that Pathway Program participants are appointed under Schedule D).

II.     Defendant's Motions

Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction. The Tucker Act allows the court to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). While the Tucker Act constitutes a waiver of sovereign immunity, it does not give rise to a substantive cause of action. *See United States v. Mitchell*, 463 U.S. 206, 216 (1983). "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). A source of law is money-mandating if it is "reasonably amendable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). Additionally, a plaintiff must make "a non-frivolous assertion that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv. Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008).

Defendant's initial focus in its briefing was on what is implied by the words "earn" and "entitled" in the regulations. It argued that these regulations are not money-mandating. Its more recent briefing disavows the importance of that language and we agree it is irrelevant. The substance of plaintiff's claim is that on January 14, 2009, he was improperly moved by the VA Form 3497 from a full-time SEEP intern position, which had benefits, to an intermittent position that did not include benefits. Plaintiff does not appear to question the key assumption in defendant's argument, namely, that, if the January 14 change of plaintiff's status from full time to intermittent was proper, then he would not be entitled to the disputed benefits. We recognize plaintiff's argument to be that the change was of no effect, or fraudulent, or both. The gist of it is that he *should not have been changed* to an intermittent employee position. If he was not an intermittent employee, he would have a claim to benefits. Plaintiff's real argument is thus that the court should strike VA Form 3497 from plaintiff's personnel files on the ground that it is illegal or coerced.

Defendant's subsequent briefing shifted to a different jurisdictional argument, a variant of a familiar theme in this court's personnel decisions. We have often held that the court cannot reclassify employees into different

positions, because, as the Supreme Court explained in *United States v. King*, 395 U.S. 1 (1969), a plaintiff must have a claim for "actual, presently due money damages from the United States." *Id.* at 3. An employee is entitled to the pay of the position to which he or she is appointed. If it requires a predicate determination that the employee should be in a different position, pay grade, or classification, that predicate determination cannot be made by this court. This court does not, at least insofar as this case is concerned, have the type of general equitable powers necessary to declare a personnel action illegal. As the Court in *King* held, what the employee there was requesting was "essentially equitable relief of a kind that the Court of Claims has held throughout its history . . . it does not have the power to grant." *Id.* at 2-3. Similarly, in *United States v. Testan*, 424 U.S. 392 (1976), the Court held that our predecessor court, the Court of Claims, did not have jurisdiction to hear a claim by two employees that the work they were doing deserved a higher pay classification. *Id.* at 399.

The Back Pay Act allows the award of money damages in this court if an appropriate authority has determined that, under applicable law, rule, or regulation, an employee has been affected by an unjustified or unwarranted personnel action resulting in the withdrawal or reduction of all or part of their pay. *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999). If the claim in this court is that the employee did not receive the pay commensurate with their appointed position, e.g., they were discharged improperly or had not received correctly calculated overtime pay, then the court has independent power to act. *See Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006); *King v. United States*, 81 Fed. Cl. 766 (2008); *Power v. United States*, 220 Ct. Cl. 157, 163-64 (1979). If there must first be a predicate determination that the agency has made a mistake in classifying the employee in some way for pay purposes, then the court cannot, in the first instance, make that determination.

*King* and *Testan* dealt with mis-classification, and defendant repeatedly characterizes what plaintiff is seeking here as "reclassification" of his position. That is not what plaintiff is asking for, however. Reclassification, as plaintiff correctly points out, has to do with the job classification and the pay grade to which someone is appointed. *See generally Anderson v. United States*, 764 F.2d 849 (Fed. Cir. 1985). Unfortunately for plaintiff, however, we think the distinction does not matter. Plaintiff's position as a GS-303-5 Program Support Assistant, STEP, does not automatically entitle him to the benefits he seeks. For the reasons we set out above, when plaintiff's schedule was changed to "intermittent," there were automatic consequences in terms of benefits. Indeed, presumably that is why the VA sought the change. To

reverse that change in work schedule, however, would require the court to declare that the action was improper, either because Mr. Dawson's actual schedule would not support the change or because the STEP program was not intended for such purposes. We believe that determination was reserved to the employing agency, and perhaps, if challenged, to review at OPM. It is not within this court's purview. As defendant correctly points out, we lack jurisdiction to grant the equitable relief that plaintiff seeks. "Except in strictly limited circumstances, *see* 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).

III.   We Lack Jurisdiction Over Claims of Fraud or Coercion

Plaintiff's secondary argument also falls outside of this court's jurisdiction. The following excerpt summarizes plaintiff's claim:

> Mr. Dawson and many class members (all hired before February 1, 2009) while full or part time employees and unquestionably entitled to benefits, were tricked and coerced into signing 'Employee Request for Change to Part-Time Employment' . . . which together with the Standard Form-50 . . . based on the Request for Change deprived them of their benefits in violation of 5 C.F.R. § 213.3202(a) and (a)(13)(i) and 5 C.F.R. § 213.3202(b) and (b)(16)(i)[] . . . which mandated that they get the benefits. . . . [T]he Request for Change was knowingly false and fraudulently obtained.

Pl.'s Mem. of P. & A. in Opp'n to Mot. to Dismiss 2. Plaintiff characterizes the agency's conduct as coercive and fraudulent and he asks that the court intervene to undo the change to intermittent status. Such claims sound in tort, however. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Tucker Act explicitly excludes causes of actions sounding in tort from its waiver of sovereign immunity. 28 U.S.C. § 1491(a)(1). Thus, we do not have jurisdiction to entertain plaintiff's claims of fraud. *Brown*, 105 F.3d at 623.

CONCLUSION

      We agree with defendant that this is not the proper forum to hear plaintiff's claims. They do not originate in a money mandating statute or regulation because plaintiff's status during the relevant period was that of an intermittent employee and he was therefore not entitled to annual or sick leave. The court is not empowered to move plaintiff back into a position from which he could make that argument. Defendant's motion to dismiss, therefore, is granted. The clerk is directed to enter judgment accordingly.

                                           s/ Eric G. Bruggink
                                           ERIC G. BRUGGINK
                                           Judge